## Sumby, Appellant, *v.* Green.

*Wills—Undue influence—Issue devisavit vel non—Instructions.*

Upon an issue devisavit vel non, the case was submitted to the jury which found that the paper which had been admitted to probate by the register as the last will of the decedent had been procured by fraud and undue influence. The will gave to the proponent decedent's entire estate, amounting to about $8,000, less $360 given to others. At the time the decedent signed the paper, she was sixty-three years old, 'and according to the testimony, was feeble and infirm. She lived in the same house with the proponent. She went there to be treated by him as a masseur, after her attending physician found he could do nothing to relieve her from rheumatism and heart and kidney troubles from which

she was suffering. Decedent could not read and could write nothing. but her name. When she wrote her name at the end of what proponent claimed to be her last will, proponent was, according to his own testimony, sustaining confidential relations with her. *Held,* that the case was for the jury and that the court did not abuse its discretion in refusing to set aside the verdict and award a new trial.

Argued Jan. 19, 1914. Appeal, No. 333, Jan. T., 1913, by plaintiff, from judgment of C. P. Philadelphia Co., Dec. T., 1912, No. 5569, on verdict for defendant on issue devisavit vel non in case of Elbert A. Sumby, Executor of a paper writing purporting to be the last will and testament of Sarah E. Berry, deceased, and Elbert A. Sumby, individually as legatee under same, v. Charles H. Green. Before FELL, C. J., BROWN, MESTREZAT, POTTER, and ELKIN, JJ. Affirmed.

Issue devisavit vel non. Before FERGUSON, J.

Sarah E. Berry, a colored woman, about sixty-three years of age, died, unmarried and without issue, in the City of Philadelphia, January 8, 1910. At the time of her death and for seventeen months prior thereto she had been in the same house with Elbert A. Sumby, a masseur. He was not related to her by blood or marriage. She went to his home to be treated by him after her physician had been unable to relieve her from rheumatism, heart and kidney troubles. There was evidence to the effect that in the summer of 1906 she had a stroke of paralysis and that during the period between 1906 and 1910 she was feeble and infirm and in failing health. During all the time she lived in Sumby's house, and for some time before, he transacted business for her and sustained confidential relations with her. This he admitted in his testimony. She had an estate worth about $8,000. On August 12, 1908, about ten days after she took up her home in Sumby's house, she signed the paper involved in this issue, by the terms of which he was made her sole executor and given her entire estate, less

$360 given to others. One of the witnesses to the decedent's signature to the will, testified that it was a typewritten paper, all ready for her signature, and that she took it from her bosom. It was not read to her. The other attesting witness merely testified that he witnessed her signature. Each of these witnesses, shortly after the death of Mrs. Berry, certified over his own signature that Sumby was present when she signed the paper, but, on the trial, testified that he was not. The paper was admitted to probate by the register as the will of decedent, and, on appeal by the appellee, her half-brother, an issue was directed to the Common Pleas, to determine (1) Whether or not the said Sarah E. Berry, at the time of the execution of the said writing, dated the twelfth day of August, 1908, alleged to be her last will and testament, was of sound, disposing mind, memory and understanding; (2) Whether or not the making of the said writing was procured by fraud and undue influence on the part of Elbert A. Sumby and other persons; (3) Whether or not the said writing is the last will and testament of the said Sarah E. Berry.

The court charged in part as follows:

1. I spoke about a relationship of confidence. There are many relationships which we describe as relationships of confidence. For instance, that between a guardian and a ward, or between a lawyer and his client, or between a physician and his patient. Those relationships only illustrate what I have in mind. If there is a condition in which one reposes confidence in the other, and if he receives substantial benefits from the one who reposes confidence in him by means of a will, that person has to show that the will was made freely and without any influence or pressure upon the mind of the man or woman who made it. Has Mr. Sumby shown that in this case? Where did the will come from? There is no evidence on that subject except that it came from the dress of Mrs. Berry. No one said she could operate a typewriter, and the evidence is that she could not read

or write anything more than her name. Has the plaintiff, Mr. Sumby, satisfied you affirmatively that Mrs. Berry executed the paper which has been produced as her own free and untrammeled act, without any influence or pressure from anybody else? If he has, then you should so find by your verdict. If he has not, then he has not sustained the burden which is upon him.

2. Is the said writing the last will and testament of Sarah E. Berry, deceased? You will answer that yes or no. With reference to the last question I will say what I said before, that if Mrs. Berry made the will and if she made it under undue influence, or if Mr. Sumby has not shown that she made it without undue influence, then it is not her last will, although it might purport to be her last will by the fact that her signature is attached to it.

3. The controversy in this case largely hinges on whether or not Mrs. Berry was unduly influenced to make the will which has been produced, and it arises largely because it is contended that Mr. Sumby was in a confidential relationship with her, and, as I stated to you, the presumption is that if there exists the physical and mental conditions of which I told you and a person in a confidential relationship received a substantial gift under the will, the law puts upon that person who receives the gift under the will the burden of showing whether or not the testator executed the will without any undue influence upon her. If he does not show that, then it is not her will; if he does show it, it is her will. While it might be that you could find from the evidence that Mrs. Berry signed the will, yet it would not be her will unless she freely signed it without undue influence upon her.

The jury found for the proponent on the first question and against him on the second and third.

The court refused the motion for a new trial and judgment was entered in accordance with the finding. Proponent appealed.

*Errors assigned* were the refusal of the court to direct a verdict for the plaintiff; the refusal to grant a new trial; the refusal to instruct the jury 'that merely requesting or even inducing a person to will an estate in favor of the proponent of a will, is not alone sufficient to warrant the finding of a verdict in favor of the contestant, and the instructions to the jury above set forth.

*Clinton Maloney,* with him *Thomas O. Haydock, Jr.,* for appellant.

*John W. Parks,* for appellee.

PER CURIAM, February 9, 1914:

In this issue devisavit vel non the jury found that the paper which was admitted to probate by the register as the last will of Sarah E. Berry, had been procured by fraud and undue influence. It gave to the proponent her entire estate, amounting to about $8,000, less $360 given to others. At the time she signed the paper she was sixty-three years old, and, according to the testimony, was feeble and infirm. She lived in the same house with the proponent. She went there to be treated by him as a masseur, after her attending physician found he could do nothing to relieve her from rheumatism and heart and kidney troubles from which she was suffering. She could not read and could write nothing but her name. When she wrote it at the end of what appellant claims to be her will, he was, according to his own testimony, sustaining confidential relations with her. The case was for the jury, and, under all the evidence, there is no reversible error in the instructions complained of in the first, second and third assignments. The discretion of the court was not abused in refusing to set aside the verdict and award a new trial.

All the assignments are overruled and the judgment is affirmed.